And we will move on to the next case on the calendar, which is Freeman v. Ethicon. And we will move on to the next case on the calendar, which is Freeman v. Ethicon. Counsel, whenever you're ready, you can proceed. Good afternoon. May it please the Court. My name is Kyle Dingman. I'm here from Scott & Scott on behalf of Appellants Terry Freeman and Earl Freeman. And I'd like to reserve five minutes for rebuttal. Watch the clock. We'll try to help you. So when we mooted this, the topic that I think people brought up the most was the harm analysis and the causation analysis. And so I'd like to kind of start at the end and address that first to make sure we cover it. And this is the issue of whether it's harmful air. And one of the things that we found is that a terminological distinction really actually simplifies this. So when I say general causation, I mean causation in the sense that cigarettes cause cancer. So not necessarily everybody's going to get it, not necessarily that this particular person had their cancer caused by cigarettes, but just that as a product, it's capable of causing that. And when I say specific causation, I mean that this particular person, like the Marlboro man's cancer, came from a cigarette. What we have here is a preclusion instruction that went to general causation. It didn't go to specific causation. Did it? I mean, that's, I must say you're starting in the right part of the case because I'm not sure whether the instruction misstated the previous judgment or not because I'm having trouble understanding exactly what the previous judgment held. But the judge said to the jury, in order to award damages in this case, you have to find that the pro-lift product was defective. Correct? Yes. And you got an instruction to the jury that said you should take as established that the pro-lift product and other products made by them were defective in certain ways. Yes, sir. If I were the plaintiff, I think I'd want that instruction. Not only did these guys make this product that my client was hurt by, but they're really pretty negligent in Now, so I'm not sure how you get hurt by that instruction. Well, and so that is a paradoxical aspect of this case. It's strange that the plaintiffs want the instruction to be narrow, but it's important because these two different categories of products do very, very different things. Yes, but the jury was instructed that it could only find against Ethicon if this product, pro-lift, was defective. Correct? Yes. It wasn't said, and some other ones too. Yes. And the jury did not find in favor of Ethicon. Yes, and so... So, and the jury was also told, by the way, in addition to the one that they say is defective, they made a lot of other bad stuff also, and it still didn't find in favor of Ethicon. So, again, tell me how it hurts you. Well, I think that the defendants in their closing argument put this exactly the right way, which is that if this is actually a dangerous product, and these two products are the same, they have the same list of complications, if one of them is actually dangerous, then how come every doctor, including the plaintiff's paid expert, is still using this other product that has the exact same list of complications? The reason that that argument was a bad argument, factually, is because it's not true that they cause the same list of complications. There are complications that only the pro-lift can cause on that list. It's false to say that the TVTO or the TVT category of products is capable of causing, for example, distortion of the vaginal cavity. That's not something that it can cause. And so when the jury's told that all of these doctors, every single doctor in the case, is still out there using the TVTO, what that conveys to them is that when they go and do the risk balance, the risk-benefit balancing that they were instructed to undertake by instruction number 16, it says, this probably isn't that dangerous, because every doctor is still using things with this exact list of complications. And you have the ability to ask, and they did ask the doctor, what's the difference between them? Why do you keep using this one and not use that one? And that's all argument. And the jury heard that argument, and you made arguments about it. Why are we supposed to spurn the jury's verdict? I'm glad you brought that up. There were two questions during the trial of Dr. Bursic when we tried to get him to distinguish between the two categories of products. The first drew an objection, so we wanted him to generally talk about the differences and risks. What we were then restricted to doing was frequency and severity. The problem is... But that's not what you're... But you're not raising that argument on appeal. You're not saying the judge improperly restricted my cross-examination of someone. That's not our main thrust, because the judge... Well, it's not... It's not your main argument. I'm not sure I read it among any of your arguments, is it? We brought this up in the opening brief, but... Indeed, you brought it up in a way that struck me, as I read your reply brief, as being potentially misleading. Because, in fact, you weren't blocked the way that the opening brief seems to suggest you were blocked. I mean, my notations... Well, I was really outraged by this, only as I kept looking at the trial record, and I looked at the acknowledgement in your reply brief. You weren't actually prevented from exploring that subject. I would disagree with that, Your Honor. And the reason is, what we are allowed to explore, the frequency and severity, it assumes, as a predicate fact, general causation. If there's no general causation, there cannot be frequency and severity. And we were precluded from drawing out that there is no general causation here. And then, even if we had been able to do that... I do not understand what you just said. What is it you were precluded from doing? We were precluded from seeking to have Dr. Bursick testify that the TVTO does not cause and did not cause, in any way, the distortion of the vaginal cavity... But they didn't argue to the jury. It wasn't one of their defenses that you've sued about the wrong product. They didn't say, well, ha-ha, it wasn't the prolift, it was the TVTO that caused your problems. Their defense was, our device did not cause your problems, period. They were not caused by anything that we did. And so, I mean, I'd understand if they made an argument that, well, they really should have sued about the TVTO. That's the dangerous product, not the prolift. But that wasn't their argument, and none of the testimony went that way. So, the way that that comes in is because the TVTO, because all the doctors are still using the TVTO, and then the jury has to decide, do the risks outweigh the benefits? That conveys to the jury the risks don't outweigh the benefits, that the risks aren't that bad, because every doctor still uses this product. Well, then stop, because there are risks in everything. I mean, I climbed on an airplane yesterday. There were risks. But we distinguish amongst risks, and I don't see anything that prevented you from presenting evidence or testimony or anything or making the argument, maybe most importantly, that the risks were different. Our point is that this is not a risk of the TVTO. It's not something the TVTO is capable of. I mean, I'll look at your reply brief, and there's a sentence here. If you care, it's on page 21. Unlike the preclusion instruction, plaintiff witnesses did not have the benefit of a trial court directing to the jury that they, quote, must accept as true, close quote, the witness testimony. I don't see many instructions that tell the jury you must accept a witness's testimony as true. I mean, we're in kind of a bizarre world to begin with, with the application of the state court judgment, whatever that was. But I don't think, I don't see an error in a trial court not telling the jury, you've got to accept this as true. Parties argue it. You elicit testimony. You had the opportunity to elicit testimony. What's the problem? The problem, so this is instruction number 11, and it's this first sentence here. So everything in instruction number 11, the jury is told you have to take as being 100% true. They have to take as true that their products, including the product you're suing about, have certain risks. They didn't have to take as true that the risks were of equal magnitude. They were not told to take as true that any of the risks either caused or didn't cause your client's difficulties. They were simply instructed, by the way, which I think is not an unfair summary of the state trial court judgment, but I wanted to put that aside for a second, that a state court had determined that a number of the products, including the one at issue in this case, had certain risks. Yes. So you brought up the magnitude of the risks, and I think that this is an important point. The magnitude of the risk assumes that there is a risk in the first place. That was something that we disputed that we should have been entitled to have the jury decide, and instead of being able to have the jury decide that, because we say there is no risk. Go ahead, Judge. Risks of what?  There's no risk from the TVTO of distortion of the value. But you're the one that said that you've got to accept. I mean, this is weird because be careful what you ask for. I mean, let's face it. It's the plaintiff that's putting in front of the district court, take this state decision as conclusive, and the state court decision talks about the other product. So now you're really complaining about what you asked for. Certainly defendants didn't want to accept as a given the state court. But I don't see anything in the instruction that says you can't argue that they're different, and I don't see in the instruction that says they're all the same risk, which is the problem that you're arguing to us here. Our point is not just that it's a difference of degree. Our point is that it's a difference in kind, that they cause. And if you look at, there's a couple record citations in Judge Sturgeon's opinion that we point to in our brief, but he's got a couple tables in there, and he lists out. He says these are the risks of the TVTO. And distortion of the vaginal cavity to the extent that it prevents the woman from ever being able to have intercourse again is not one of the TVTO risks. It can't cause that. There's not enough mesh in contact with the vaginal wall. And so when they say the TVTO can cause it, the jury has to assume that that's correct. No, it doesn't. It just said certain risks. And then the risks are the ones that are described in the TVT list, and I don't see that risk as being one of the ones described in the list of the TVTO risks. Are you talking about Judge Sturgeon's decision? Yes. Yeah, so I would agree with that. It's not one of the risks. So the jury wasn't instructed that they had to, wasn't instructed one way or the other about his testimony. You had the ability to attack it. They were at factual finding 2F is where the jury was instructed that polypropylene causes that particular risk. Tell me which one. It says instruction 11, 2F. The plaintiff's implanted with these products at risk of and can cause the following complications. Can cause. The door is still open for you to say the risk here is trivial, the risk here is enormous. They're different. But if the fact is that it cannot cause this and the TVTO cannot cause that risk. Well, no, if you say it cannot cause that risk, then it seems to me they would be entitled to a preclusion instruction the other way because the verdict says it can cause those risks. They. In the first case. So I can point to some places. Seems to me if you were arguing to the jury that the TVTO could not possibly cause these risks, that would be contrary to the judgment in the first case, which says it can cause those risks. I don't believe so, Your Honor. And I can point you to a couple of places in that. Well, tell me. I'm looking at the what I'm looking is at what the findings were in the first case. And the TVTO complication, a list of TVTO complications are in the first column. And doesn't the first judgment establish that it can cause those risks? Not that it did in your case. Not that it always will, but that it can. No, Your Honor. And it's because when you look at. So there's a couple different tables he has. And I think that you're probably referring to. I'm trying to pull it up. I think you're probably referring to the version of the table that both sides have in their brief, which is. It's a 5ER883. 883, yeah. So that table. I mean, I took it out of your brief, so I thought it was the right table. No, it's definitely an important table there. That table lists. So you've got the TVTO risks. And then he says the Prolif Plus Sim has the same risks as the TVTO. And then he adds new risks for the Prolif that are not risks listed for the TVTO. And so those additional risks are Prolif specific. And then he lists. And I can point you here. 5ER873 is one of our citations. He lists numerically a bunch of TVTO risks. And you'll see that the distortion of the vaginal cavity isn't known. He is the judge? Judge. And then also it's 5ER894-6. It's a three-page column where he also, again, lists the TVT risks. And he doesn't list distortion of the vaginal cavity. It's not something that the Prolif is capable of causing. Finally, there's one other incorrect misstatement. Well, but now take me back here because I'm trying. This instruction had a rich history, as they say in the Antiques Roadshow. You proposed it. Then you decided it wasn't accurate and moved to change it after they objected to it. And then the judge gave something slightly different, closer to what they proposed than what you proposed. Did you ever make a specific objection to risks listed as opposed to just? Yes. Where is that? As to the final instruction, not as to when you were quibbling about what it looked like. Yes, Your Honor. So the objection we made, the formal objection, is 2ER53-68 is our full set. And the particular objections that are relevant are the objections to instruction number three and four, I believe. And then 2ER53-68, those are our formal objections that we filed to the other side's proposed jury instructions. And we specifically incorporate a brief that we briefed just this issue. And Section 2, Heading 2 of that brief, is just about what product should this cover. It doesn't talk about anything else. And we list pretty much, if you hold it up with our opening brief, the same arguments. Okay. You used up your time, but we'll give you a little bit of time for rebuttal.  May it please the Court. Jason Zero on behalf of defendants. I'd like to talk about the magnitude of the risks, the clarity of the state trial court's decision, but I'll start with the point about distortion of the vaginal cavity and cut straight to the issue of harmlessness. There is no indication whatsoever that the jury in this case found that the ProLift Plus M device, that's the device at issue in this case, was not defective, that there wasn't a failure to warn, or that there wasn't a breach of warranty, simply because they were instructed that an entirely different device, the TVTO, could cause distortion. There's just no indication whatsoever that the jury's verdict was based on the idea that a different product could cause distortion. In a case with a general verdict, that's this case, isn't it? Of course. How would we find indications of what the jury's verdict was based on? Yes, Your Honor. You look at the closing arguments, you see what the parties talked about. They were not talking about distortion of the vaginal cavity with respect to TVTO. I'll also point out plaintiff's counsel made an argument here that they disagree that the TVTO can cause distortion of the vaginal cavity. Well, their own experts said that it could. You asked a question, Judge Hurwitz, about whether there was a specific objection on this point. I'll direct the court to pages 95 and 96 of the excerpts of record. That's where you'll see- Which volume? That's volume two. That's where you'll see plaintiff's brief that counsel just referenced, where they said that the TVT risks were different. TVT is a shorthand for the SUI family of devices. The TVT risks were different than the POP risks. And what you see there is that table that Your Honor referenced. That's the table on page 883 of the excerpts of record. And what plaintiffs did in their objections was simply copy and paste the table out of the California State Court decision. They did not explain to Judge Marshall what the differences were between the types of complications that the two sets of devices could cause. There was no discussion that said, well, TVT can't cause- TVTO can't cause distortion of the vaginal cavity, whereas the POP devices can. And as a practical matter, that's very unfair for Judge Marshall because we're talking, after all, about a 128-page statement of decision. And they say, you know, it's fairly summarized in this one table. But in truth, Judge Marshall's obligation was to read the whole statement of decision and see what the risks of the two products were. On the table, that table was not a summary of what the California trial court found. It was a summary of one witness's testimony. Of course, this being a nine-week trial, there were many witnesses that testified at the trial. And in a 128-page decision, there's lots and lots of analysis about the risks of defendant's devices. So it was not a sufficiently specific objection to copy and paste one witness's testimony with no explanation and to say, Your Honor, Judge Marshall, you should be able to figure out from this what the risks of the two sets of devices are. Let me tell you one thing that troubled me about this, and I'm not sure how to put my hands on it. They proposed the instruction, roughly, that's originally given. Yes. Which seems bad for you, because it says you make a whole bunch of risky stuff. I agree. You object to it and say, no, you should only tell them about the ProLift. And then somehow the judge accepts your objection. Yes? No, that's not quite correct. Well, I guess I'm not sure why at the end of the day the judge shouldn't have just told them about the ProLift. Whether or not the prior decision found other stuff risky, I'm not sure why it's relevant to this case that the prior decision found products not at issue in this case risky. Yes, Your Honor, two points. One is that's a great argument for us on harmlessness. The jury didn't really need to think about any other products. Well, except it's the argument you're – it's the instruction you're trying to defend today. Of course. And so my suspicious nature lets me to believe what's in it for you to have an instruction that says you make more than one risky product. Well, our argument initially was that it was all mesh devices, not just our Ethicon Inc.'s mesh devices, but the whole industry that makes polypropylene mesh treatments. And you were entitled – you made that argument? We made that argument. And you weren't precluded from making that argument by the preclusion instruction? No. And the reason we made that argument is because I attended the California State Court trial. The evidence in that case was about all manufacturer's devices. It was not strictly limited to our devices. The reason it would not have been correct to give an instruction in this case about ProLift Plus M specifically is because what Judge Marshall's primary responsibility was was to translate the state court decision into jury instructions for the jury in this case, and there was no finding in the California State Trial Court that ProLift Plus M has certain risks. It's just not there. The court will search in vain for a finding specific to ProLift Plus M. That's the preclusion instruction that plaintiffs requested, but it's not in the state court decision. The state court's decision – and you had a question about this – I think can reasonably be read in one of two ways. And this is important both for issue preservation and on the merits. And I'll start with the merits. It can reasonably be read one of two ways. The first way is that POP products – these are pelvic organ ProLift products as a category – have certain risks that the TVT devices, the SUI devices, do not have. The other reasonable way to read the California state court decision, all 128 pages of it, is that all of defendant's mesh products have these risks. Two reasonable readings, having attended the California trial and having read the decision many, many times, I think the latter reading, the all-mesh reading. But what was at issue in that case? In other words, what was somebody trying to recover about? So the state of California had alleged that defendants falsely advertised their mesh products. And that's important. It's their mesh products in general. The way the California trial court unfolded is reflected in the 128-page statement of decision. It didn't say, today we're going to litigate the TVT device and its risks and its warnings. Tomorrow we're going to litigate TVTO, its risks, its warnings. The next day we're going to do ProLift Plus M, et cetera, et cetera, et cetera. So there weren't specific findings for each and every device, and therefore it would have been incorrect for Judge Marshall to slice and dice the California state court decision to pull out a ProLift-specific finding that wasn't there. Now you had asked a question, Judge Hurwitz, about – or suggested that it was somewhat difficult to figure out exactly what the California state court had held. And this is the distinction I was talking about between the POP meshes as a category and all of defendant's mesh. And I think that's important, one, because – primarily because this is a jury instruction case. And if a decision, a prior decision in case one can be reasonably read one in two ways, I think that means Judge Marshall has discretion to adopt one of the two. Is it or is it a question of law? In other words, I must admit, even though I can't figure out precisely what the first decision held, it ought to be a question of law, shouldn't it be? Well, I think if there was a very clear statement in the case, in case one, you know, here is the finding. ProLift Plus M causes 10 risks. In that case, maybe it is a question of law, but if there are reasonable interpretations, I think that's inherently a discretionary determination. And I would actually point the court to the Emick decision from the Supreme Court. This is cited in the plaintiff's brief where the Supreme Court says, in effect, that when a trial court is translating for a jury the findings in an earlier case, there is inherently discretion in the way that that's presented. There's discretion in the way the judge describes it. Exactly. But if the judge describes it legally wrong, then she's abused her discretion, hasn't she? So I don't think in a circumstance like this there would be an abuse of discretion because I think there has to be discretion. I must say I'm always reluctant to find an abuse of discretion. I can't figure out what the right answer is because it seems a little bit hubristic. The rule for instructions is it's an over-review as to the substance of the law. It's abuse of discretion in terms of how it's communicated, and I've got the same problem that Judge Hurwitz has alluded to here. I'm not entirely sure what should be gleaned from the state court decision, and I'm not sure it's discretionary at that point. If we decide, well, the district court's guess was reasonable, not abusive, but we happen to think it was wrong as a matter of law, which is the standard? Well, let me put it a little bit differently. Given the lack of clarity in the state court decision, I think that heightens the burden on plaintiffs to make a specific objection because really it's hard to read the California state court decision and figure out what's going on. I think that puts the onus on plaintiffs to tell Judge Marshall. Well, at least the first time the plaintiff read it they thought. . . They agreed with us. No, they agree with you now, not then. This was a card they wanted to play. They agreed with us now, and they agreed, I should just add, they agreed with the Western District of Kentucky, who has read the decision the same way. So I think what all this means is it's very difficult to interpret the California state court decision. We're talking about, and as you mentioned, Judge Hurwitz, we're talking about a risk of a device that's not even at issue in this case, and I'll get to the magnitude point that you all were discussing in the prior exchange in a moment. But I do think this is a case that calls for the plain error standard of review and that you don't have to worry really about what happens sort of at the interstices of the state court decision, whether or not it's an abuse of discretion or a legal issue. But turning now, this goes both to harmlessness and to the way in which this cashed out at the trial. I want to talk a little bit about the magnitude of the risks because the plaintiff's argument from the briefs, I think the argument you heard today was a little bit different. It was about this one hyper-specific risk, the risk of vaginal distortion with the TVTO device. But as I understood the argument in the briefs, what plaintiffs were saying is that Judge Marshall equated for the jury the risks of the POP products on the one hand and the SUI products on the other hand, said that the risks were the same. But of course, all we're talking about here is a list of complications, things that could happen if a device wasn't planted, and that really doesn't tell you that the two sets of devices were equally dangerous because a product's dangerousness is determined by the severity of the risks, how frequently they occur, and how difficult they are to treat. And that was the exact argument that the plaintiffs were able to make at trial. That's the argument that many people have made at these trials. Sometimes the defendants win without preclusion. Sometimes they lose without preclusion. But disembodied risk, the fact that a medical device can cause a type of complication, doesn't tell you if it was negligently designed or if it was unreasonably dangerous. Am I correct in reading the... I was focusing on the final arguments, that your side never said the problem occurred because of the TVT device, not because of the... No. Because if you had made that argument, then it seems to me the point that your friend is making would be quite strong. No, and on the subject of closing argument, defense counsel's closing argument was featured prominently in both the plaintiff's brief, I think, as evidence of prejudice. And I just... two points on that very briefly. The first is we were, of course, responding to plaintiff's counsel's closing argument, where they had said more than a half dozen times, you should... jury, you should take these fact findings to the bank. They're 100% true. They're the roadmap to the truth. So counsel would have been derelict in her duties if she didn't address the argument by plaintiff's counsel. The second point is what you've got in the brief is a truncated quotation. Plaintiffs give you, I think, one page of defense counsel's closing argument. If you go on to read the following two pages of her argument, she makes the point that I just made, which is the reason that we care about all this is because it's about the rate of complications, the severity of complications, how difficult they are to treat. And just knowing that a TVT device, for example, can cause X, Y, and Z complication doesn't tell you if it's safe or unsafe or too dangerous or unreasonably dangerous. You need to know the complication rate, how severe those complications are, and whether they can be treated. And the evidence in this case, plaintiffs put on their evidence that the complications associated with the Prolif Plus M device were too severe, occurred too frequently, and were too difficult to treat. They put on that evidence, and the jury rejected it, as they have in many other cases. And nothing about the preclusion instruction with respect to one specific risk relating to TVTO had anything to do with the jury's finding on that. Can you help me understand the state court judgment a little bit better? Sure. As I understood it, it was you engaged in false advertising, or it didn't unfold disclosure, to put it better, a different way. You should have said more when you were describing your products to people about the risks. But it didn't hold that the products were defective. Correct. Correct. So, typically, when I think about general causation, it's synonymous with defect, right? Like, general causation is, here's a defect. And specific causation is, did the defect cause an injury in this plaintiff? There was no general causation finding or defect finding in the state court decision. The judge simply said, these types of devices can cause certain types of risks, much in the same way that if you read the side of a, like, medicine pill bottle, you'll see a statement that says, this pill can cause X, Y, Z, so on and so forth risks. Just like that. Not general causation, not specific causation, not defect, not unreasonable danger. These are just facts, facts about the types of complications. And they should be, and according to the state court judgment, they should be disclosed to either consumers or learned intermediaries. The state court judgment held, this is the standard for false advertising and unfair competition law claims in California, that a reasonable doctor was not, was likely to be deceived by. Right, that's why I said a learned intermediary. Yeah, learned, yes. Likely to be deceived is the standard, not was actually deceived or anything like that. I don't think it's germane to this case, that particular aspect of the decision. But for the three reasons I summarized, and I think that's set out in our briefs, we would ask the court to affirm, first, the error is not properly preserved, so this is a plain error case. Second, there was no error. Third, any error on this record was harmless. Thank you. Before you sit down, Judge Rawlinson, do you have any questions for counsel? No. Thank you. Why don't we put a minute back on the clock for counsel for rebuttal. I do have a question for counsel here. Counsel, do you agree that the issue before us is whether or not the court abused this discretion in formulating the preclusion instruction? No, Your Honor. We think it's a de novo standard of review. We do believe that the judgment should be reversed, even if an abuse of discretion standard applies, but we believe that this is de novo. Why would it be de novo as opposed to abuse of discretion? Because it's a formulation of the instruction, correct? So, for two reasons. Number one is that Emick Motors holds that when you go to tell the new jury what the findings are from the original, the first case, that that's a question of law. And so it would be de novo from that. Number two is that when the trial court's judgment misstates the law or misleads the jury, then it's a de novo standard of review. And here we're contending that it did both. It misstated the law because whether or not a particular fact was established by an earlier judgment is a legal fact. It's not a physical fact. And then number two, it misled the jury because it told the jury that they had to accept something is true when in reality it was not true, or at least it was something that we are entitled to dispute. And so I think the court went much further, even in this particular error, than even the other case, the Wheeler case, where the court's instruction was misleading, but really only in context. Here, the instruction actually contains something that's actually false. Counsel, the difficulty I'm having with your argument is that the district court actually incorporated the language that your client proposed from the state court decision. So I'm finding it difficult to accept an argument that it was erroneous when you actually advocated inclusion of that language. So we would actually dispute that. And the parties go back and forth on the procedural history on this. The only language that we ever proposed be read to the jury are the two jury instructions we put forward. There is a main and then there is an alternative. Prior to that, when we filed the original motion for summary judgment, we didn't make a distinction between the different kinds of products because there's only one product in the case at that point. The TVTO claims had been dismissed about six months before that. Once the judge narrowed it, and I think correctly narrowed it to just a poll of plus M, thereafter, we consistently argued that, and again, this is the only real context is where we gave jury instructions. We said this is what the court should do, where they've tried to say that somehow in the pretrial order... You said what? You said what is what the court should do? Oh, we said that the version that the court should read to the jury is the proposed instruction, and that was our proposed instruction number three and four. And then we submitted a brief for here's why we think you should make this argument. In the PTO, in the pretrial order, there's a discussion about the parties' different views on the language. If you read that whole section, though, what becomes very clear is that we are responding to the other side's efforts to have the judgment changed. We're not asking the judge to change the judgment because we thought that the summary judgment was correct, and the summary judgment includes the limitation just to the prolif plus M. And then... Why don't... You had a fortunate thing happen to you. When you stand up for rebuttal, sometimes you don't know what judges are worried about. You learned what Judge Rawlinson wanted to know. So why don't you try to finish up quickly for us? Yes, Your Honor. The one point I wanted to make, they contend that somehow our expert claims that the distortion of the vaginal cavity came from the prolif plus M. In fact, if you check their record site on that, it's incorrect. The record actually says the opposite. Dr. Bursick said that the vaginal contraction and anatomic distortion is more caused by the prolif plus M. That record site is docket entry 24, page 218, and it's between lines 11 and 14. Thank you for your time. Thank you. Thank both counsel. Thank both counsel for their briefs and arguments in this case, which will be submitted.
judges: RAWLINSON, CLIFTON, HURWITZ